# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**FRANK COPPLER,**

        **Plaintiff,**

**v.**                                                                     **CIV. No. 99-58 JP/WWD**

**SHAWN BECK, individually and in his
official capacity as a Deputy Sheriff of the
Santa Fe County Sheriff's Department;
BENJIE MONTANO, individually and in
his official capacity as the Santa Fe County
Sheriff; COUNTY OF SANTA FE; and THE
BOARD OF COUNTY COMMISSIONERS OF
THE COUNTY OF SANTA FE,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

On July 26, 1999, Defendant Shawn Beck filed a Motion to Dismiss Based on Qualified Immunity, (Doc. No. 21), under Fed. R. Civ. P. 12(b)(6). After thoroughly reviewing the briefs, the pleadings, and the applicable law, I conclude that Defendant Beck's motion should be granted in part and denied in part.

## I. BACKGROUND

Plaintiff's version of the facts are as follows. On January 15, 1997, he pulled into a Giant Convenience Store in Santa Fe, New Mexico. After pumping his gas, Plaintiff moved his vehicle from the pumping area to an area near the store. While Plaintiff was walking from his vehicle to the store, Officer Beck ordered Plaintiff to move his vehicle because it was illegally parked.

Plaintiff responded that the vehicle was not illegally parked and that he would move it after he had finished paying for his gas. Officer Beck then arrested Plaintiff, claiming that Plaintiff had cussed at Officer Beck, which constituted the offense of disorderly conduct.[1] During Officer Beck's arrest and handcuffing of Plaintiff, Officer Beck injured Plaintiff's shoulder.

On January 15, 1999, Plaintiff filed a Complaint for Civil Rights Violations, for Tort Claims, and for Personal Injuries. Defendant Beck's motion to dismiss requests dismissal of Plaintiff's First, Fourth, Fifth, Eighth, and Fourteenth Amendment claims on the ground of qualified immunity.

## II.  LEGAL STANDARD

Because the assertion of a qualified immunity defense affects the standard governing a motion to dismiss, an analysis of the appropriate legal standard governing Defendant Beck's motion to dismiss begins with a discussion of the qualified immunity doctrine.

### A.  Qualified Immunity

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense, the plaintiff bears the "burden of convincing the court that the law was clearly established." *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988). To do so, the plaintiff "must do more than identify in the abstract

---

[1] "Disorderly conduct consists of: [ ] engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace." N.M. Stat. Ann. § 30-20-1(A) (Repl. Pamp. 1994).

2

a clearly established right and allege that the defendant has violated it." *Id*. In order for pre-existing law to be clearly established, there must ordinarily "be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992), *holding limited on other grounds by Hinton v. City of Elwood*, 997 F.2d 774 (10th Cir. 1993). The question whether a plaintiff has invoked "clearly established law" is a question of law which the district court must decide. *Losavio*, 847 F.2d at 646.

### B. Motion to Dismiss

A motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In deciding a motion to dismiss, the court presumes that all of the plaintiff's factual allegations are true and draws all reasonable inferences in the plaintiff's favor. *Breidenbach v. Bolish*, 126 F.3d 1288, 1293 (10th Cir. 1997).

"Where a qualified immunity defense is asserted in a 12(b)(6) motion, however, we apply a heightened pleading standard, requiring the complaint to contain 'specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established

law."[2] *Dill v. City of Edmond*, 155 F.3d 1193, 1204 (10th Cir. 1998) (quoting *Breidenbach v. Bolish*, 126 F.3d 1288, 1293 (10th Cir. 1997)). An assessment of the qualified immunity defense is limited to the pleadings. *See Dill*, 155 F.3d at 1203. "If the original complaint is deficient, the plaintiff must amend his or her complaint to include specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrated that the actions taken were not objectively reasonable in light of the clearly established law." *Breidenbach*, 126 F.2d at 1293.

To determine whether the qualified immunity doctrine protects a defendant from liability, the court must first determine whether the plaintiff has asserted a violation of a constitutional right. *See Dill*, 155 F.3d at 1204. "If the complaint alleges a valid claim, then we must determine whether the constitutional right was clearly established so that reasonable officials would have understood that their conduct violated that right." *Id.* (citation omitted); *see also Van Deelen v. City of Eudora*, 53 F. Supp. 2d 1223, 1233 (D.Kan. 1999). If the complaint does not allege that a defendant's conduct violated the law, there is no need to determine whether the law was clearly established. *See Van Deelen*, 53 F. Supp. 2d at 1233 (citing *Clanton v. Cooper*, 129 F.3d 1147, 1153-54 (10th Cir.1997)).

---

[2] The parties have not raised the issue of a heightened pleading standard regarding the assertion of a qualified immunity defense in a motion to dismiss. Although it has been argued that a heightened pleading requirement was precluded by *Crawford-El v. Britton*, 523 U.S. 574 (1998), the Tenth Circuit has continued to adhere to the heightened pleading requirement. *See, e.g., Dill v. City of Edmond*, 155 F.3d 1193, 1204 (10th Cir. 1998); *Taylor v. Harrington*, No. 97-1170, 1999 WL 40969 (10th Cir. Feb. 1, 1999); *Van Deelen v. City of Eudora*, 53 F. Supp. 2d 1223, 1232 n. 4 (D.Kan. 1999).

4

## III. DISCUSSION

### A. Plaintiff's First, Fifth, and Eighth Amendment Claims

In Count I of Plaintiff's complaint, he alleges that Defendant Beck violated Plaintiff's rights under the First, Fifth, and Eighth Amendments of the United States Constitution and 42 U.S.C. § 1983. (Compl. at ¶ 26.) However, Plaintiff's complaint contains no allegations setting forth the specific basis for any claim arising under the First, Fifth, or Eighth Amendments.

Plaintiff also fails to respond to Defendant Beck's argument that these claims should be dismissed because Plaintiff did not allege the bases for these claims. Plaintiff's failure to respond constitutes consent to grant Defendant Beck's motion to dismiss regarding any alleged First, Fifth, or Eight amendment violations.[3] *See* D.N.M.LR-Civ 7.5(b) (1999) (failure to file "a response in opposition to any motion constitutes consent to grant the motion"); *Gutierrez v. Deming Public Schools*, No. 95-2277, 1996 WL 364617 (10th Cir. 1996) (plaintiff's failure to respond to motion to dismiss justified dismissal of plaintiff's complaint). Therefore, these claims should be dismissed with prejudice.

### B. Plaintiff's Fourteenth Amendment Claims

Plaintiff's complaint alleges that Defendant Beck violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983 to be secure in his person and effects against unreasonable searches and seizure and not to be deprived of life,

---

[3] Although Plaintiff discusses the First Amendment in his response, (Resp. at 2-5), it appears from the complaint and response that Plaintiff mentioned the First Amendment only in the context of his argument that a reasonable officer would have known that it was unlawful to arrest Plaintiff for disorderly conduct because it was clearly established that Plaintiff had a First Amendment right to protest police conduct. It does not appear that Plaintiff is alleging a First Amendment claim that is separate from his Fourth Amendment unlawful arrest claim.

5

liberty, or property without due process of law. (Compl. at ¶ 26.) However, it appears that Plaintiff is no longer asserting that Defendant Beck's allegedly unlawful arrest of Plaintiff violated his Fourteenth Amendment rights because Plaintiff's response is devoid of any reference to the Fourteenth Amendment. Plaintiff's Fourteenth Amendment claims should therefore be dismissed. *See* D.N.M.LR-Civ 7.5(b).

Even if Plaintiff is alleging that his unlawful arrest claim can be brought under the Fourteenth Amendment, this claim should be dismissed with prejudice because an unlawful arrest claim should be analyzed exclusively under the Fourth Amendment. *See, e.g., Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996) (holding that "Fourteenth Amendment substantive due process standards have no applicability" to plaintiff's claim for wrongful arrest and detention and that this claim should be analyzed under the Fourth Amendment).

To the extent Plaintiff is alleging that his excessive force claim is brought under the Fourteenth Amendment, this claim should also be dismissed with prejudice. It is beyond dispute that excessive force claims should be analyzed under the objective reasonableness standard of the Fourth Amendment and not the substantive due process provisions of the Fourteenth Amendment. *See Graham v. Connor,* 490 U.S. 386, 395 (1989).

### C. Plaintiff's Fourth Amendment Claims

Plaintiff alleges that Officer Beck violated his Fourth Amendment rights by "falsely and illegally arresting and imprisoning plaintiff," (Compl. at ¶ 26). Although Plaintiff did not mention "excessive force" in his allegations, he also seems to imply that Officer Beck used excessive force during the arrest in violation of Plaintiff's Fourth Amendment rights.

*1.     Unlawful Arrest*

Plaintiff has asserted a violation of his Fourth Amendment right to be free from unreasonable searches and seizures by alleging that, even if Plaintiff had cussed at Officer Beck,[4] it is illegal to arrest and imprison someone on a charge of disorderly conduct under N.M. Stat. Ann. § 30-20-1 merely for swearing at an officer.[5]  The primary issue raised by the parties' briefs is whether at the time of Plaintiff's arrest the law regarding disorderly conduct was clearly established such that a reasonable officer in Defendant Beck's position would have known that it was a Fourth Amendment violation to arrest someone for disorderly conduct under N.M. Stat. Ann. § 30-20-1 for merely swearing at an officer.  *See Dill*, 155 F.3d at 1204.  Plaintiff argues that it was clearly established that an officer could not arrest someone for disorderly conduct for cussing in public as an expression of protest because questioning police action, even if in vulgar terms, is at the core of the First Amendment.  Defendant Beck contends that it is not clearly established under New Mexico law that Defendant Beck's actions violated the Fourth Amendment.

---

[4] Plaintiff's complaint does not actually allege that he swore at Defendant Beck.  Instead, he alleges that Defendant Beck "claimed that plaintiff had cussed at him and had thus committed the offense of disorderly conduct."  (Compl. at ¶ 14.)  To the extent Plaintiff alleges that Officer Beck arrested him for disorderly conduct although Plaintiff had not used profane language, Defendant Beck's motion to dismiss should be denied because a reasonable police officer would know that arresting someone solely on the ground of using non-profane language to question an officer's order would violate the First Amendment and would not, therefore, violate the disorderly conduct statute.  *See State v. James M.*, 111 N.M. 473, 475 (Ct.App. 1991).

[5] Plaintiff also argues that the arrest was unlawful because a warrantless arrest for a misdemeanor requires exigent circumstances.  This argument is meritless because New Mexico law is clearly established that an officer may make a warrantless arrest if the officer has probable cause to believe a misdemeanor offense is being committed in the officer's presence.  *See State v. Calanche*, 91 N.M. 390, 391 (Ct.App. 1978).

7

"New Mexico courts have held [the disorderly conduct] provision constitutional because it criminalizes only speech that 'tend[s] to incite an immediate breach of the peace.'" *United States v. Stenzel*, 49 F.3d 658 (10th Cir.) (citation omitted), *cert. denied*, 516 U.S. 840 (1995). "Police officers, by nature of their training, are generally expected to have a higher tolerance for offensive conduct and language." *James M.*, 111 N.M. at 477. Merely yelling obscenities at an officer does not create probable cause to arrest someone for disorderly conduct. *See City of Alamogordo v. Ohrlich*, 95 N.M. 725 (Ct.App.) (holding that defendant who yelled profanity at officer did not violate city ordinance prohibiting disorderly conduct), *cert. denied*, 96 N.M. 725 (1981); *see also State v. Wade*, 100 N.M. 152 (Ct.App. 1983) (reversing defendant's conviction of abusing a police officer when defendant had yelled obscenities at officer). A defendant who has his fists clenched and uses a loud voice to argue with police officers also does not violate the disorderly conduct statute. *See State v. Doe*, 92 N.M. 100 (1978). Without witnessing an act of violence, indecent behavior, or boisterous, loud, noisy, or profane language, an officer cannot arrest defendants for disorderly conduct simply because their car is blocking a road. *See State v. Florstedt*, 77 N.M. 47 (1966).[6]

These cases are easily distinguished from others upholding convictions for disorderly conduct. *See Stenzel*, 49 F.3d at 662 (holding that there was sufficient evidence to convict defendant of disorderly conduct when he had used profanity with military officers and had either struggled with an officer or attempted to hit him with his elbow); *James M.*, 111 N.M. 473

---

[6] Case law from other jurisdictions also supports the conclusion that an officer does not have probable cause to arrest someone for disorderly conduct solely for using profanity in talking with the officer. *See Spiller v. City of Texas City*, 130 F.3d 162 (5th Cir. 1997) (holding that officer had no probable cause to arrest plaintiff for disorderly conduct when plaintiff told officer to "move his damn truck" from the gas pump).

8

(affirming the defendant's conviction of disorderly conduct when he had repeatedly yelled profanities while arguing with a non-officer); *Oden* 82 N.M. 56 (holding that lewd comments of male defendants directed at five girls playing tennis constituted disorderly conduct). *James M.* and *Oden* both involve speech directed at non-officers. *Stenzel* concerns speech *and* conduct directed at officers. Based on the facts Plaintiff has alleged, this case involves only speech directed at an officer. Therefore, *Oden*, *James M.*, and *Stenzel* are distinguishable.

A review of New Mexico case law dictates the conclusion that the law was clearly established such that a reasonable officer could not have believed that he had probable cause to arrest Plaintiff for disorderly conduct simply because Plaintiff had responded with profanity when told to move his car from a fire lane. Plaintiff has also satisfied the heightened pleading standard regarding his unlawful arrest claim. *See Dill*, 155 F.3d at 1204. Therefore, Defendant Beck is not entitled to the defense of qualified immunity regarding Plaintiff's Fourth Amendment claim of unlawful arrest.

### 2. Excessive Force

Plaintiff seems to have intended to allege that Defendant Beck violated Plaintiff's Fourth Amendment rights by using excessive force during Plaintiff's arrest. The first issue to be determined is "whether Plaintiff's complaint sufficiently alleges facts that, if proven, would constitute a [Fourth] Amendment [excessive force] claim." *Dill*, 155 F.3d at 1204; *see also Breidenbach*, 126 F.3d at 1293 (stating that "if the plaintiff fails to allege facts sufficient to demonstrate a Fourth Amendment violation, 'there is no need to proceed any further; [and] the case ends in defendant's favor.'") (citation omitted).

The Fourth Amendment guarantees that citizens will be "secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. A seizure occurs when an officer restrains a person's freedom to walk away. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985). "Police use of excessive force is an established constitutional violation, *Tennessee v. Garner*, 471 U.S. 1, 7-8, 105 S.Ct 1694, 1699-1700, 85 L.Ed.2d 1 (1985), and in an excessive force case, the factfinder determines if the police officer is liable by deciding if the force he used was objectively unreasonable." *Quezada v. County of Bernalillo*, 944 F.2d 710, 718 (10th Cir. 1991) (citing *Graham*, 490 U.S. at 399). The substantive inquiry that decides whether an officer's use of force was excessive under the Fourth Amendment "is the same inquiry that decides whether the qualified immunity defense is available to the government actor." *Quezada*, 944 F.2d at 718. The objective reasonableness standard requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to resist arrest by flight." *Graham*, 490 U.S. at 396.

Unfortunately, Plaintiff's complaint is extremely vague about his excessive force claim. Although Count I of Plaintiff's complaint alleges that Defendant Beck violated Plaintiff's Fourth Amendment rights, the complaint does not specifically allege that Defendant Beck used "excessive force." The only alleged facts that could conceivably support a Fourth Amendment excessive force claim are that "[d]uring the arrest and handcuffing of plaintiff, Beck injured plaintiff's shoulder," (Compl. at ¶ 15), and that "Plaintiff did not physically resist the arrest in any manner."[7]

---

[7] Although Plaintiff's response to Defendant Beck's motion asserts that Defendant Beck "slammed the plaintiff against the police car, injuring plaintiff's shoulder," (Resp. at 6), an assessment of a qualified immunity defense is limited to the pleadings. *See Dill*, 155 F.3d at 1203.

(Compl. at ¶ 17.)

Plaintiff's complaint does not allege any facts regarding the nature or severity of the shoulder injury or the specific manner in which his shoulder was injured. His shoulder injury could have been anything from a slight bruise to a dislocation and could have been inflicted accidentally or purposefully in any number of ways. Because Plaintiff's complaint does not contain "specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law," *Breidenbach*, 126 F.3d at 1293, Plaintiff has failed to satisfy the heightened pleading requirement. *See Jackson v. City of Beaumont Police Dept.*, 958 F.2d 616, 621 (5th Cir. 1992) ("Although [plaintiff's] complaint contains some factual detail concerning injuries allegedly suffered as a result of the arrest, it contains virtually no facts which would allow determining whether the officers' conduct was unreasonable . . . ."); *Thomas Wayne Burkham v. Officer Ruben Montez, et al.,* Civ. No. 98-380 BRB/WWD, slip op. at 6-7 (D.N.M. August 20, 1999) (Doc. No. 22) (holding that defendant officer was entitled to qualified immunity and that plaintiff's Fourth Amendment deadly force claim should be dismissed with prejudice because the plaintiff's complaint failed to satisfy the heightened pleading standard that applies when qualified immunity is raised in a motion to dismiss). Therefore, Plaintiff's Fourth Amendment excessive force claim should be dismissed.

Finally, although Plaintiff should have already amended his complaint in response to Defendant Beck's qualified immunity defense, Plaintiff's Fourth Amendment excessive force claim

---

Moreover, Plaintiff's response fails to describe the exact manner in which he was injured or the nature or severity of his shoulder injury.

will be dismissed without prejudice to afford him the opportunity to amend his complaint. *See Breidenbach*, 126 F.3d at 1294 (remanding to district court with instructions to dismiss plaintiff's complaint without prejudice and with leave to amend); *Burkham,* Civ. No. 98-380 BRB/WWD (D.N.M. October 23, 1999) (Doc. No. 31) (vacating August 20, 1998, judgment dismissing plaintiff's complaint with prejudice and granting plaintiff leave to file proposed first amended complaint after determining that proposed complaint satisfied *Breidenbach*'s heightened pleading standard). Plaintiff may file an amended complaint clarifying his excessive force claim by not later than January 3, 2000.

IT IS THEREFORE ORDERED that Defendant Beck's Motion to Dismiss Based on Qualified Immunity, (Doc. No. 21), is GRANTED in part and DENIED in part as follows:

1. Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment claims are dismissed with prejudice;

2. Plaintiff's Fourth Amendment excessive force claim against Defendant Beck is dismissed without prejudice; but Plaintiff may file an amended complaint as to this claim by not later than January 3, 2000; and

3. Defendant Beck's motion to dismiss Plaintiff's Fourth Amendment illegal arrest and detention claim is denied.

_____
**UNITED STATES DISTRICT JUDGE**